# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

---

DISTRICT COURT CASE NUMBER:
2:22-cv-05176-DSF
BANKRUPTCY COURT CASE NUMBER:
2:20-bk-21020-BR
ADVERSARY CASE NUMBER:
2:21-ap-01155-BR
Chapter 7

---

In re Girardi Keese, Debtor

---

ERIKA GIRARDI, Appellant

v.

ELISSA D. MILLER, Chapter 7 Trustee, Appellee

---

## APPELLANT'S OPENING BRIEF

---

On Appeal From Order of the United States Bankruptcy Court
for the Central District of California, Los Angeles Division
Hon. Barry Russell

---

**GREENBERG GROSS LLP**
Evan C. Borges, State Bar No. 128706
*EBorges@GGTrialLaw.com*
David T. Shackelford, State Bar No. 318149
*DShackelford@GGTrialLaw.com*
Amir A. Shakoorian, State Bar No. 324442
*AShakoorian@GGTrialLaw.com*
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone:  (949) 383-2800
Facsimile:  (949) 383-2801

Attorneys for Appellant

# **TABLE OF CONTENTS**

**Page**

I.   JURISDICTIONAL STATEMENT ................................................. 8

II.   STATEMENT OF THE ISSUES ................................................ 8

III.   STATEMENT OF THE CASE ................................................... 9

IV.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 10

V.   ARGUMENT ............................................................ 13

   A.   THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE TRUSTEE'S CLAIMS WERE NOT BARRED BY THE APPLICABLE STATUTES OF LIMITATION AND THE STATUTE OF REPOSE ........................................................ 13

     1.   California Civil Code Section 3439.09 Applies to the Trustee's Claims. ................................................. 14

     2.   The Statute of Repose Codified in California Civil Code Section 3439.09(c) Presents an Absolute Bar to the Trustee's Claims, Regardless of When the Claims Were Discovered. .............................................. 17

     3.   The Delayed Discovery Rule Does Not Extend the Time Limitation on the Trustee's Claim Because GK's Knowledge Is Imputed to the Trustee. ......................... 22

   B.   THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE TRUSTEE'S TURNOVER MOTION APPLIED TO THE EARRINGS ............. 25

     1.   The Trustee's Failure to Prove that the Earrings Are Undisputed Property of the Estate Is Fatal to the Turnover Motion. ............................................... 25

     2.   The Trustee Bore the Burden to Prove That the Earrings Were Property of the Estate. ................................ 27

     3.   The Earrings Were Indisputedly Not Property of the Bankruptcy Estate On the Petition Date. .................... 28

     4.   The Turnover Motion Fails Because The GK Client Trust Funds Used to Purchase the Earrings Were and Are Not Property of the Bankruptcy Estate. ....................... 29

   C.   CONCLUSION ....................................................... 31

CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 8015(A)(7)(B) .......................... 32

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

*In re AFI Holding, Inc.*,

6

525 F.3d 700 (9th Cir. 2008) ............................................................................. 15

7

*In re Auld*,

8

561 B.R. 512 (10th Cir. BAP 2017) .................................................................... 8

9

*In re Bailey*,

380 B.R. 486 (6th Cir. 2008) ............................................................................... 8

10

*Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*,

11

879 F.3d 808 (7th Cir. 2018) ............................................................................. 28

12

*Bank of Marin v. England*,

13

385 U.S. 99 (1966) ............................................................................................. 22

14

*Bavely v. Powell*,

15

219 B.R. 754 (6th Cir. BAP 1998) .................................................................... 31

16

*In re California Trade Technical Schools, Inc.*,

17

923 F.2d 641 (9th Cir. 1991) ....................................................................... 12, 30

18

*In re Castiglione*,

19

2010 WL 9474767 (Bkrtcy. E.D. Cal. 2010) .................................................... 21

20

*In re Century City Doctors Hosp., LLC*,

466 B.R. 1 (C.D.Cal. 2012) ......................................................................... 25, 26

21

*In re Coupon Clearing Service, Inc.*,

22

113 F3d 1091 (9th Cir. 1997) ...................................................................... 12, 30

23

*CTS Corp. v. Waldburger*,

24

5 73 U.S. 1, 9, 134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014) ....................... 18

25

*Daly v. Kennedy*,

26

279 B.R. 455 (Bankr.D.Conn. 2002) ................................................................. 31

27

*Doe v. Pasadena Hospital Association, Ltd.*,

28

2020 WL 1244357 (C.D .Cal. March 26, 2020.) ............................................... 22

*Donell v. Keppers*,
    835 F.Supp.2d 871 (S.D.Cal. 2011) ........................................................ 14, 17, 19

*In re Dublin Securities, Inc.*,
    133 F.3d 377 (6th Cir. 1997) ........................................................................... 23

*In re Faasoa*,
    276 B.R. 631 (S.D.Cal. 2017) .......................................................................... 25

*FDIC v. McSweeney*,
    976 F.2d 532 (9th Cir. 1992) ............................................................................ 14

*Filip v. Bucurenciu*,
    129 Cal.App.4th 825 (2005) ............................................................................. 14

*Forum Ins. Co. v. Comparet*,
    62 Fed.Appx. 151 (9th Cir. 2003) ................................................................ 16, 17

*In re Gurga*,
    176 B.R. 196 (9th Cir. BAP 1994) ............................................................... 25, 26

*In re GYPC, Inc.*,
    634 B.R. 983 (S.D. Ohio 2021) ........................................................................ 23

*In re Hedged-Investments Associates, Inc.*,
    84 F.3d 1281 (10th Cir. 1996) .......................................................................... 23

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ............................................................................. 23

*Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*,
    198 B.R. 45 (S.D.N.Y.1996) (Sotomayor, J.) ................................................... 25

*Inco Development Corp. v. Sup. Ct.*,
    131 Cal.App.4th 1014 (2005) ........................................................................... 20

*Internet Direct Response, Inc. v. Buckley*,
    2011 WL 835607 (C.D.Cal. 2011) ................................................................... 18

*In re JMC Telecom LLC*,
    416 B.R. 738 (C.D. Cal. 2009) .................................................................... 17, 19

*In re Lyle*,
    324 B.R. 128 (N.D.Cal. 2005) .......................................................................... 27

*Macedo v. Bosio*,
   86 Cal.App.4th 1044 (2001) ................................................................ 16, 18, 20

*Mejia v. Reed*,
   31 Cal.4th 657 (2003)("The UFTA was enacted in 1986.") ............................ 19

*Midland Asphalt Corp. v. United States*,
   489 U.S. 794 (1989) ............................................................................................ 8

*In re Mwangi*,
   764 F.3d 1168 (9th Cir. 2014) .......................................................................... 27

*Nichols v. Birdsell*,
   491 F.3d 987 (9th Cir. 2007) .............................................................................. 8

*Placerville Fruit Growers' Assn. v. Irving*
   (1955) 135 Cal.App.2d 731 ............................................................................... 30

*Railroad Telegraphers v. Railway Express Agency, Inc.*,
   321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944) ........................................... 20

*Roach v. Lee*,
   369 F.Supp.2d 1194 (C.D.Cal. 2005) ....................................................*passim*

*Rooz v. Kimmel (In re Kimmel)*,
   367 B.R. 166 (N.D.Cal. 2007), *aff'd* 378 B.R. 630 (B.A.P. 9th
   Cir.2007), *aff'd* 302 F. App'x 518 (9th Cir.2008) (unpublished) .................... 20

*In re Roti*,
   271 B.R. 281 (Bankr. N.D.Ill. 2002) ............................................................... 27

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,
   325 B.R. 134 (Bankr. S.D.N.Y. 2005) ............................................................ 28

*Sears, Roebuck & Co. v. Blade*,
   139 Cal. App. 3d 580 (1956) ............................................................................ 19

*Spradlin v. Khouri (In re Bruner)*,
   561 B.R. 397 (B.A.P. 6th Cir. 2017) ................................................................ 28

*Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*,
   335 B.R. 539 (D. Del. 2005) ............................................................................ 25

*Stevenson v. J.C. Bradford & Co. (In re Cannon)*,
   277 F.3d 838 (6th Cir. 2002) ............................................................................ 30

*In re Stotz Fredenhagen Indus., Inc.*,
    554 B.R. 777 (Bankr. D.S.C. 2016) ................................................... 24

*Stratton v. Sacks*,
    99 B.R. 686 (D. Md. 1989) ................................................................. 22

*In re Ulz*,
    388 B.R. 865 (Bankr. N.D. Ill. 2008) ................................................ 29

*United States v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983) ..................................................................... 27, 30

*Vail Lake Rancho California, LLC v. Abreu*,
    2014 WL900372 (Cal. App. 4th March 7, 2014) (unpublished) ........................ 17

*In re White*,
    389 BR 693 (9th Cir. BAP 2008) .......................................... 9, 12, 27

*Wilson v. Garcia*,
    471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985) ................... 20

*In re Yellowstone Mountain Club, LLC*,
    656 Fed.App'x 307 (9th Cir. 2016) ..................................................... 23

*In re Zetta Jet USA, Inc.*,
    624 B.R. 461 (Bankr.C.D.Cal. 2020) ................................................. 27

**Statutes**

Bankruptcy Code § 541 ..................................................................... *passim*

Bankruptcy Code § 542 ..................................................................... *passim*

Bankruptcy Code § 544 ............................................................... 13, 29

Bankruptcy Code § 548 ............................................................... 13, 29

Bankruptcy Code § 550 ..................................................................... 15

Civil Code § 3412 .............................................................................. 17

Code of Civil Procedure § 338 ................................................... 18, 19

Code of Civil Procedure § 356 ...................................................... 20

California Uniform Fraudulent Transfer Act .................................. *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11 U.S.C. § 541 .................................................................. 12, 22, 23, 30

11 U.S.C. § 542 ...................................................................... 8, 11, 27, 28

11 U.S.C. § 548 ..................................................................................... 15

11 U.S.C. § 550 ..................................................................................... 15

28 U.S.C. § 157 ....................................................................................... 8

28 U.S.C. § 158 ....................................................................................... 8

28 U.S.C. § 1334 ..................................................................................... 8

**Other Authorities**

Fed. R. Bankr. P. 8002 ............................................................................ 8

S.Rep. No. 989, 95th Cong., 2d Sess., 82-83 (1978), reprinted in 1978
    U.S.C.C.A.N. 5787 .......................................................................... 22

3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 414 ........................ 18

1

## I.   <u>JURISDICTIONAL STATEMENT</u>

The bankruptcy court ("Bankruptcy Court") had jurisdiction to hear this proceeding under 28 U.S.C. §§ 157 and 1334.  On July 11, 2022, the Bankruptcy Court entered an Order granting ("Order") the Chapter 7 Trustee's Motion for Turnover of Personal Property ("Turnover Motion") brought under 11 U.S.C. § 542(a) in adversary proceeding number 2:21-ap-01155-BR.  The Bankruptcy Court's Order was a final appealable order.  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").  "The bankruptcy court's order granting the trustee's motion for turnover is a final order."  *In re Bailey*, 380 B.R. 486 (6th Cir. 2008); *see also*, *In re Auld*, 561 B.R. 512, 515 (10th Cir. BAP 2017).

This District Court for the Central District of California (the "Court") has jurisdiction under 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of bankruptcy judges within this district.  Specifically, this Court has jurisdiction to hear the instant appeal from the Order of the Bankruptcy Court, Hon. Barry Russell, entered on July 11, 2022.

On July 25, 2022, Erika Girardi ("Ms. Girardi") filed a timely notice of appeal and statement of election.  *See* Fed. R. Bankr. P. 8002(a)(1).

## II.   <u>STATEMENT OF THE ISSUES</u>

**First Issue**: The Bankruptcy Court erred as a matter of law when it determined that the Trustee's claims based on an alleged fraudulent transfer of property over 15 years ago were not barred by the applicable statutes of limitation and statute of repose.

**Standard of Review**:  Conclusions of law are reviewed under a *de novo* standard.  *See Nichols v. Birdsell*, 491 F.3d 987, 989 (9th Cir. 2007).

**Second Issue**: The Bankruptcy Court erred as a matter of law when it determined that the underlying property subject to the Turnover Motion was

property of the bankruptcy estate, and that the Turnover Motion was a proper basis to compel the return of the alleged property of the estate.

**Standard of Review**: The question of whether a property interest is "property of the estate" as defined by Bankruptcy Code Section 541 and subject to recovery under Bankruptcy Code Section 542 are issues of law subject to *de novo* review. *In re White*, 389 BR 693, 698 (9th Cir. BAP 2008).

### III.   STATEMENT OF THE CASE

In 2000, Ms. Girardi married Tom Girardi ("TG") when she was 27 years old and he was 60 years old.  During their marriage, TG and his law firm Girardi Keese ("GK") handled all of the couple's marital finances.  Ms. Girardi is not and never has been an attorney.  Her career during her marriage to TG was as an entertainer. *See* Declaration of Erika Girardi filed concurrently with Opposition, Dkt. 47-1 at ¶ 2.

In approximately 2004 or 2005, as a gift for either Ms. Girardi's birthday or the couple's wedding anniversary, TG gave her a set of diamond earrings.  About a year later, TG and Ms. Girardi's home was ransacked while they were out for dinner and the earrings were stolen.  Subsequently, in 2007, TG gave Ms. Girardi a replica of the earrings that had been stolen. *Id*. at ¶¶ 8, 9.

In November 2020, Ms. Girardi filed for divorce against TG and moved out of the couple's residence.  Since that time, she has been living in a rental and her principal assets are her personal belongings (including her jewelry) and her income as a cast member of *The Real Housewives of Beverly Hills*. *Id*. at ¶¶ 11, 12.

In December 2020, creditors of GK filed an involuntary chapter 7 bankruptcy case against GK (as well as against TG).  The Bankruptcy Court appointed Elissa Miller as trustee ("Trustee") of the GK bankruptcy estate.  About a year later, Ms. Girardi learned for the first time that the replacement earrings she had received in 2007 were allegedly bought with money transferred from a GK client trust account for the Rezulin litigation ("GK Client Trust Account").  Ms. Girardi had no

1  involvement in or knowledge of the actions of TG or GK in connection with the

2  Rezulin litigation or the GK Client Trust Account in the Rezulin litigation.  *Id.* at ¶

3  13.

4        On January 25, 2022, the Trustee filed a motion before the Bankruptcy Court

5  under 11 U.S.C. § 542 for an order compelling turnover of the earrings (the

6  "Turnover Motion" or "Motion").

7        On June 14, 2022, Ms. Girardi filed her opposition to the Turnover Motion

8  ("Opposition").  *See* Dkt. 47.  In the Opposition, Ms. Girardi alleged that:  (1) the

9  statute of limitations and statute of repose had expired and barred the Trustee's

10 claims based on the 2007 earrings transaction; and (2) the Turnover Motion was

11 improper because the GK Client Trust Account and, in turn, the earrings were

12 indisputably not property of the GK bankruptcy estate.

13       On June 21, 2022 the Trustee filed her reply brief ("Reply").

14       On June 28, 2022, the Bankruptcy Court held a hearing on the Motion and, on

15 July 11, 2022, entered its Order granting the Motion.

16       On July 25, 2022, Ms. Girardi timely filed a Notice of Appeal.

17       **IV.  INTRODUCTION AND SUMMARY OF ARGUMENT**

18       This appeal arises from the Bankruptcy Court's Order granting the Trustee's

19 Turnover Motion on the theory that the underlying property – earrings gifted to and

20 innocently received by Ms. Girardi in 2007 from her now-estranged and then-

21 wealthy husband – was purchased using fraudulently transferred funds.  Through the

22 Turnover Motion, the Trustee seeks to blame Ms. Girardi for events occurring more

23 than 15 years ago at GK, as to which it is undisputed that – as found by the

24 Bankruptcy Court – Ms. Girardi had no part and had no knowledge.  *See* June 28,

25 2022 Hearing Transcript ("Hearing Transcript") at 19:12-18.  The Bankruptcy

26 Court's decision raises an important issue of whether the law allows setting aside or

27 otherwise challenging events of 15 years ago to take away a gift of property which

28 does not belong to the bankruptcy estate and which was received by an innocent

1    spouse.

2         The Bankruptcy Court erred as a matter of law in granting the Turnover

3    Motion.  The Trustee's claim was and is time-barred by every imaginable statute of

4    limitations as well as California's applicable statute of repose, which extinguishes

5    any cause of action for fraudulent transfer based on transactions occurring more than

6    seven years before an action is filed.  In addition, the Turnover Motion improperly

7    sought to recover property that was and is not property of the GK estate through a

8    Bankruptcy Code Section 542(a) motion – in contravention of Supreme Court and

9    Ninth Circuit precedent.  Accordingly, the Order granting the Turnover Motion

10   should be reversed for two fundamental reasons.

11        ***First***, the Trustee's claim arising out of a fifteen year-old transaction in 2007

12   is barred by the statute of limitations and the statute of repose applicable to

13   fraudulent transfers in California.  Specifically, California's Uniform Fraudulent

14   Transfer Act ("UFTA"), as codified in Cal. Civ. Code Section 3439.09(c),

15   establishes a seven-year statute of repose applicable to *all* causes of action relating

16   to a fraudulent transfer.  The California legislature's statute of repose (1) creates an

17   insurmountable time bar to the Turnover Motion, (2) applies regardless of how the

18   fraudulent transfer is described under common law or statutory causes of action and

19   (3) cannot be tolled under any circumstances, equitable or otherwise.

20        In addition, Trustee's claims fall outside of any applicable statutes of

21   limitation for the reason that GK's knowledge of the 2007 transfer is imputed to the

22   Trustee, who stands in the shoes of the debtor (i.e., GK).  Thus, GK's undisputed

23   knowledge of the transaction at issue in 2007 commenced the accrual of any cause

24   of action related to the transfer of funds that led to acquisition of the earrings.  A

25   straight-forward reading of the relevant bankruptcy statutes, legislative history and

26   applicable case law all compel the conclusion that a bankruptcy trustee is charged

27   with GK's knowledge of events in 2007.  Therefore, the delayed discovery rule is

28   inapplicable.  In sum, where, as here, a bankruptcy trustee purports to act under 11

1  U.S.C. § 541, the trustee is prohibited by law from obtaining greater rights than

2  those of the debtor on the petition date.

3     **Second**, the Turnover Motion was improper because it is undisputed that the

4  earrings, and specifically the funds used to purchase them, were never part of the

5  GK bankruptcy estate.  Under bankruptcy law, turnover motions under 11 U.S.C. §

6  542, as the Trustee purported to do here, are only proper when the estate's

7  ownership of the property at issue is *undisputed*.  Thus, under § 542, "an essential

8  element of a turnover order … *is that the property to be turned over is property of*

9  *the estate*."  *In re White*, 389 BR 693, 699 (9th Cir. BAP 2008) (emphasis added).

10  Ms. Girardi owned and wore the earrings for over 15 years prior to the Trustee's

11  action, and never had reason to doubt her ownership.

12     Notably, the funds in the GK Client Trust Account are and were never

13  property of GK; they were the property of GK's clients; and as a matter of law, the

14  trust funds were not property of the GK estate on the date of the involuntary

15  bankruptcy petition.  This is because Congress determined, under subsection (b)(1)

16  of Section 541, that property of the estate does **not** include property over which a

17  debtor exercised power "solely for the benefit of an entity other than the debtor."  11

18  U.S.C. § 541(b)(1).  Following the statute, the Ninth Circuit has long held that

19  "[b]ankruptcy law does not view property held in trust by the debtor as property of

20  the estate available for general creditors."  *In re California Trade Technical Schools,*

21  *Inc.*, 923 F.2d 641, 645-46 (9th Cir. 1991); *see also In re Coupon Clearing Service,*

22  *Inc.*, 113 F3d 1091, 1099 (9th Cir. 1997) ("Property that is held in trust by a debtor

23  for another, however, is not property of the estate.") (citing *Mitsui Mfrs. Bank v.*

24  *Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th

25  Cir.1994)).  Accordingly, because the funds allegedly used by GK in 2007 to

26  purchase the earrings were the subject of an express trust of which GK was trustee,

27  those funds were never part of the bankruptcy estate and were not property of the

28  estate on the petition date.

1       In light of the foregoing bankruptcy law, the proper recourse for the Trustee

2   would have been to bring a fraudulent conveyance action under Section 548 of the

3   Bankruptcy Code, and seek to avoid or rescind the prior transfer of funds in 2007.

4   But such an action would have been time-barred, as Section 548 only applies to

5   transactions occurring within two years of the petition date.  Alternatively, the

6   Trustee could have tried to use her strong-arm powers under Bankruptcy Code

7   Section 544, and brought an action for fraudulent transfer under California state law,

8   seeking to avoid the 2007 transaction.  But as noted, a cause of action under the

9   California UFTA was and is barred by the legislative statute of repose contained in

10  Civil Code Section 3439.09(c).  Therefore, all the Trustee's potential legal remedies

11  to void or rescind the 2007 transaction were and are, as a matter of law and public

12  policy, time-barred.  Section 542, as used by the Trustee here, does not provide an

13  exception or short-cut to these well-established rules.

14      The law imposes statutes of limitations and statutes of repose for compelling

15  public policy reasons, and the law matters.  The Bankruptcy Court's Order granting

16  the Turnover Motion, therefore, should and must be reversed.

## V.   ARGUMENT

17

18  A.   **THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW**

19       **WHEN IT DETERMINED THAT THE TRUSTEE'S CLAIMS**

20       **WERE NOT BARRED BY THE APPLICABLE STATUTES OF**

21       **LIMITATION AND THE STATUTE OF REPOSE**

22      As noted, it is undisputed that Ms. Girardi received the earrings at issue over

23  fifteen years ago, well beyond the California UFTA's three-year statute of

24  limitations and seven-year statute of repose.  *See* Cal. Civ. Code § 3439.09(c).  Yet,

25  the Bankruptcy Court granted the Motion, finding that "under these circumstances

26  I'm satisfied that the -- there is a time period in which the Trustee would not be

27  bound by [the statute of repose]."  Hearing Transcript at 41:6-8.  The Court's ruling

28  as to the statute of limitations and statute of repose is contrary to established law,

including of this District.

### 1.     California Civil Code Section 3439.09 Applies to the Trustee's Claims.

"To determine which statutory period applies, California courts look to the substance or gravamen of the complaint and the nature of the right sued upon rather than the caption of the complaint or the relief sought." *FDIC v. McSweeney*, 976 F.2d 532, 534 (9th Cir. 1992). Here, the Trustee's cause of action arises out of an allegedly fraudulent payment or transfer out of GK's client trust account to purchase the earrings. Put simply, the Trustee alleges that GK fraudulently transferred client funds to purchase the earrings. Therefore, the Trustee's claims are subject to California Civil Code Section 3439.09(c). *Donell v. Keppers,* 835 F.Supp.2d 871, 877 (S.D.Cal. 2011) (citing *Forum Ins. Co. v. Comparet,* 62 Fed.Appx. 151, 152 (9th Cir. 2003) ("[W]e find that CAL. CIV.CODE § 3439.09(c) is a statute of repose pertaining to all actions relating to fraudulent transfers.").

The California UFTA sets forth a statute of limitation and statute of repose for causes of action involving fraudulent transfers. A fraudulent transfer under the UFTA involves "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest." *Filip v. Bucurenciu*, 129 Cal.App.4th 825, 829 (2005)(citation omitted). The UFTA broadly defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." § 3439.01(m).

In this case, the "substance or gravamen" of the Trustee's Motion was an attack on an alleged fraudulent transfer of funds out of the GK Trust Account. Therefore, the statute of limitation periods under § 3439.09 apply. On its face, the Motion states that the Trustee's claim "is based upon the grounds that on March 7, 2007, Girardi issued a check drawn on the GK Client Trust Account payable to

1   M&M Jewelers in the amount of $750,000.00 for the purchase of the Diamond

2   Earrings."  Turnover Motion (Dkt. 28) at ii; *see also id.* at 1 ("Girardi [stole] money

3   from the GK Client Trust Account to buy the Diamond Earrings."); *id.* ("Girardi

4   could not transfer legal or equitable title to the Diamond Earrings to Erika"); *id.* at 6

5   ("the replacement $750,000 Diamond Earrings were paid for by a check dated

6   March 2, 2007, drawn against the 'Girardi Keese Client Trust Account' for the

7   Rezulin Mass Tort Case.").  These statements make clear that the Turnover

8   Motion's aim was at GK's fraudulent transfer of $750,000 out of its client trust

9   account to pay for the earrings.

10        The Trustee's Reply further confirms the Motion's attack on GK's fraudulent

11   transfer by describing the $750,000 transfer as "a fraudulent conveyance under 11

12   U.S.C. § 550(a)."  Reply (Dkt. 48) at 3.  Bankruptcy Code section 550 applies to the

13   liability of subsequent transferees of allegedly fraudulently transferred property, and

14   is part of the federal bankruptcy mechanism through which a trustee can recover

15   avoided fraudulent transfers.  *See In re AFI Holding*, *Inc.*, 525 F.3d 700, 703-04 (9th

16   Cir. 2008) ("California's fraudulent transfer statutes are similar in form and

17   substance to the Bankruptcy Code's fraudulent transfer provisions."); *see also id.*

18   ("the application of the good faith exception under CAL. CIV. CODE § 3439.08(a)[

19   ] is the equivalent to 11 U.S.C. § 548(c).").

20        In addition to the "the substance or gravamen" of the Motion, "the nature of

21   the right sued upon" confirms that the Trustee's aim was to attack GK's $750,000

22   fraudulent transfer.  For example, the Motion and Reply are peppered with claims

23   that the Trustee has the right to reverse Mr. Girardi's fraudulent transfer to pay for

24   the earrings.  *See, e.g.*, Turnover Motion (Dkt. 28) at 7 ("Upon discovering the

25   fraud, the Trustee made demand upon Erika, through her counsel, to return the

26   Diamond Earrings to the Trustee.").  Also, the Trustee asked the Bankruptcy Court

27   to issue an order requiring Ms. Girardi "to turn over to the Trustee a pair of

28   'Diamond Earrings' her husband, Thomas Girardi, purchased in 2007 for $750,000

1  with a check drawn against the Girardi Keese ("GK") Client Trust Account." *Id.* at

2  1. In short, the Trustee asserted a right to obtain the earrings from Ms. Girardi

3  because they were "the fruit of her husband's $750,000.00 theft from the Girardi &

4  Keese Rezulin mass tort client trust account." Reply (Dkt. 48) at 2. As these

5  excerpts illustrate, the Trustee's Turnover Motion is focused directly at GK's

6  fraudulent transfer of funds to pay for the earrings, seeking to reverse the result of

7  the transfer by bringing the earrings into the bankruptcy estate.

8      At the Bankruptcy Court below, the Trustee objected to the applicability of

9  the UFTA's statute of limitations and statute of repose, saying those limitations are

10  applicable "only to specific 'statutory claims.'" Reply (Dkt. 48) at 13. Not only is

11  this argument a transparent attempt to escape inconvenient but applicable statutes of

12  limitations, but it has been rejected by both the California Courts of Appeal and

13  federal district courts, including this District. *See Roach*, 369 F.Supp.2d at 1199

14  ("The phrase 'notwithstanding any other provision of law' is a 'term of art' that

15  'expresses a legislative intent to have the specific statute control despite the

16  existence of other law which might otherwise govern.'") (quoting *People v.*

17  *Franklin*, 57 Cal.App.4th 68, 73-74 (1997)). The unavoidable fact is that the UFTA

18  applies to all actions relating to fraudulent transfers. *See Forum Ins. Co. v.*

19  *Comparet*, 62 Fed.Appx. 151, 152 (9th Cir.2003) ("[W]e find that Cal. Civ. Code §

20  3439.09(c) is a statute of repose **pertaining to all actions relating to fraudulent**

21  **transfers**.") (emphasis added).

22      Regardless of whether the Trustee's claims are categorized as statutory or

23  some other common law claim, the gravamen of her claim is to "attack a fraudulent

24  transfer, *no matter whether brought under the UFTA or otherwise*," *Macedo v.*

25  *Bosio*, 86 Cal.App.4th 1044, 1050, n.4 (2001) (emphasis added)[1]. Similarly, the

26  _____

27      [1] Although this language in *Macedo* is dicta, federal courts sitting in California routinely

28  follow it as "well-considered dicta." *See, e.g.*, *Roach v. Lee*, 369 F.Supp.2d 1194, 1199 (C.D. Cal.

1   Trustee's underlying conversion cause of action is subject to the UFTA's statute of

2   limitations and statute of repose. *Donell v. Keppers*, 835 F.Supp.2d 871, 879 (S.D.

3   Cal. 2011) ("Plaintiff cannot attack a fraudulent transfer through an unjust

4   enrichment claim without satisfying the requirements of section 3439.09(c).");

5   *Forum Ins.*, 62 Fed.Appx. at 152 (plaintiff's civil conspiracy claim barred by section

6   3439.09(c)); *Roach*, 369 F.Supp.2d at 1199 (plaintiff's common law fraudulent

7   transfer claim barred by section 3439.09(c)); *Vail Lake Rancho California, LLC v.*

8   *Abreu*, 2014 WL900372 at *7 (Cal. App. 4th March 7, 2014) (unpublished)

9   (applying 3439.09(c)'s seven-year cutoff to "claims for conspiracy, alter ego, setoff,

10  and cancellation of an instrument under section 3412 due to fraud" when gravamen

11  of the plaintiffs' claims were attacks on fraudulent transfers).  Accordingly, the

12  Trustee's claim is a fraudulent transfer as defined by the UFTA and is subject to

13  Section 3439.09.

14          **2.      The Statute of Repose Codified in California Civil Code**

15                  **Section 3439.09(c) Presents an Absolute Bar to the Trustee's**

16                  **Claims, Regardless of When the Claims Were Discovered.**

17          As held by Judge Howard Matz of this District, Section 3439.09(c) operates

18  as an absolute bar on fraudulent transfer claims based on transactions occurring

19  more than seven years before the filing of an action.  *See In re JMC Telecom LLC*,

20  416 B.R. 738, 742 (C.D. Cal. 2009).  As Judge Matz noted:  "The

21  CUFTA…includes a statute of repose, Cal. Civ. Code § 3439.09(c), which creates

22  an absolute backstop of seven years within which a cause of action for fraudulent

23  transfer must be filed. *Id.*

24          Section 3439.09(c) specifically provides that, **"[n]otwithstanding any other**

25  **provision of law,** a cause of action under this chapter with respect to a transfer or

26  obligation is extinguished if no action is brought or levy made within seven years

27  _____

28  2005) ("Even though this comment is dicta, federal courts sitting in diversity cases must generally follow both the holdings and well-considered dicta of state court decisions.").

1   after the transfer was made or the obligation was incurred."  Cal. Civ. Code §

2   3439.09(c)(emphasis added).  Notably, while a statute of limitations creates an

3   affirmative defense, a statute of repose **"extinguishes the 'substantive cause of**

4   **action' as well as the remedy."**  *See Roach v. Lee,* 369 F.Supp.2d 1194, 1200 (C.D.

5   Cal. 2005) (emphasis added).  A statute of repose is therefore much more exacting

6   than a statute of limitations.  *See id.*  As the Trustee concedes in her Reply, "a

7   statute of repose thus is harsher than a statute of limitations in that it ends a right of

8   action after a specified period of time, irrespective of accrual or even notice that a

9   legal right has been invaded."  3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §

10  414.

11       The United States Supreme Court, in *CTS Corp. v. Waldburger*, recognized

12  the important policy considerations and purpose of statutes of repose. 5 73 U.S. 1, 9,

13  134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014) ("Like a discharge in bankruptcy, a

14  statute of repose can be said to provide a fresh start or freedom from liability.").

15  "The statute of repose limit is 'not related to the accrual of any cause of action; the

16  injury need not have occurred, much less have been discovered.'" *Id.* (quoting 54

17  C.J.S., Limitations of Actions § 7, p. 24 (2010)).

18       The Trustee's only argument in response is that, despite the subject

19  transaction occurring more than 15 years ago, the Trustee's claims are supposedly

20  not barred because of the "delayed discovery rule" under California Code of Civil

21  Procedure Section 338(d).  Mot. (Dkt. 28) at 12-14; *see also*, Reply (Dkt. 48) at 13.

22  Critically, however, the Trustee's reliance on Section 338(d) fails because "even if

23  belated discovery can be pleaded and proven …, in any event the maximum elapsed

24  time for a suit under either the UFTA or otherwise is seven years after the transfer."

25  *Macedo*, 86 Cal.App.4th at 1050, n.4.  As noted by numerous courts in this District,

26  the requirements of Section 3439.09(c) are "absolute" and cannot be tolled,

27  extended, or waived.  *See Internet Direct Response, Inc. v. Buckley,* 2011 WL

28  835607, at *6 (C.D.Cal. 2011) ("This seven-year period is absolute, so it cannot be

1  tolled or otherwise extended.") (collecting cases).

2      In a strikingly similar case, District Judge Matz addressed, as the Trustee tries

3  here, claims by a trustee to reframe claims in common law and/or to toll the statute

4  of repose based on C.C.P. Section 338(d).  *In re JMC Telecom LLC*, 416 B.R. 738,

5  742-44 (C.D. Cal. 2009).  In *JMC Telecom*, Judge Matz explained, in affirming

6  Bankruptcy Judge Neiter's ruling, that while "[Appellee] is correct that he can re-

7  frame his allegations *as a common law claim* and that § 338(d) can then supplant

8  the four-year or one-year-post-discovery statute of limitations in § 3439.09(a)…

9  **[h]owever, § 338(d) would still be unable to extend the statute of limitations**

10 **beyond the seven years prescribed by § 3439.09(c).**"  *Id*. at 743 (emphasis added).

11 Judge Matz went on to explain that applying any sort of "equitable tolling would be

12 inconsistent with a statute of repose such as § 3439.09(c), which sets a definitive

13 outside limit on the amount of time to file a suit," concluding that "this Court cannot

14 apply equitable tolling to extend the statute of limitations past the absolute deadline

15 of seven years." *Id*. at 744.

16     The Trustee's arguments to the contrary are without merit.  For example, in

17 her Reply, the Trustee cited to *Sears, Roebuck & Co. v. Blade*, 139 Cal. App. 3d.

18 580 (1956) for the proposition that a "defendant's undiscovered fraud or fraudulent

19 concealment will toll the statute of repose."  Reply at 13.  However, *Sears* was

20 decided in 1956 and thus predates the enactment of California's UFTA by thirty

21 years.  *See Mejia v. Reed*, 31 Cal.4th 657, 664 (2003)("The UFTA was enacted in

22 1986.").  Thus, *Sears* by no means provides binding authority to toll the UFTA's

23 statute of repose.

24     Also, the overwhelming weight of authority from federal and state courts

25 refutes the Trustee's position, as the courts have refused to toll statutes of repose

26 based on delayed discovery, whether under the UFTA or otherwise.  *See Donnell*,

27 835 F.Supp.2d. at 878 (tolling "section 3439.09(c)'s seven-year backstop … is

28 inconsistent with the plain language of section 3439.09(c).");*see id.* ("Therefore,

1  3439.09(c)'s seven-year backstop "is absolute," and "it cannot be tolled or otherwise

2  extended."); *Roach*, 369 F.Supp.2d at 1199-1200 (section 3439.09(c) cannot be

3  tolled); *Rooz v. Kimmel (In re Kimmel)*, 367 B.R. 166, 169 (N.D.Cal. 2007)

4  (applying seven-year statute of repose to reject request to set aside post-nuptial

5  agreement as a fraudulent transfer), *aff'd* 378 B.R. 630, 639 (B.A.P. 9th Cir.2007),

6  *aff'd* 302 F. App'x 518 (9th Cir.2008) (unpublished); *Inco Development Corp. v.*

7  *Sup. Ct.*, 131 Cal.App.4th 1014, 1022 (2005) (statute of repose for latent

8  construction defects cannot be tolled by Code of Civil Procedure § 356).

9      Indeed, the California legislature's decision to include the prefatory phrase

10 "[n]otwithstanding any other provision of law" confirms the immutability of the

11 statutory time-period.  *Macedo*, 86 Cal.App.4th at 1050 n. 4 ("[W]e think that, by its

12 use of the term '[n]otwithstanding any other provision of law,' the Legislature

13 clearly meant to provide an overarching, all-embracing maximum time period to

14 attack a fraudulent transfer.").  This plain language interpretation of the UFTA's

15 statute of repose is consistent with the intent of the legislature because "it would be

16 inordinate to bar [UFTA] fraudulent transfer claims after seven years while allowing

17 common law fraudulent transfer claims to be brought 'scores of years after the

18 transfer.'"  *Roach*, 369 F.Supp.2d at 1199.[2]

19     In this case, sound policy reasons support adhering to the California

20 legislature's statute of repose.  As noted by the United States Supreme Court,

21 important policy considerations support enforcement of statutes of limitation and

22 repose.  Statutes of repose "promote justice by preventing surprises through

23 [plaintiffs'] revival of claims that have been allowed to slumber until evidence has

24 been lost, memories have faded, and witnesses have disappeared."  *Railroad*

26     [2] As the *Roach* Court explained, "One of the purposes of Section 3439.09(c)
27 is to 'mitigate the uncertainty and diversity that have characterized the decisions
applying statutes of limitations to actions to fraudulent transfers and obligations.'"
28 *Roach*, 369 F.Supp.2d at 1199 (quoting Cal. Civ. Code § 3439.09, cmt. 2).

*Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788 (1944); *see also*, *Wilson v. Garcia*, 471 U.S. 261, 271, 105 S. Ct. 1938, 1944, 85 L. Ed. 2d 254 (1985) ("Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten.").

Indeed, in the present case, the check in question out of the GK trust account, which was used to pay a jeweler for the earrings, was signed in 2007 by two GK partners, Tom Girardi and James O'Callahan.  Of those two individuals with knowledge of the transfer, Mr. O'Callahan is deceased and Mr. Girardi is the subject of a probate court-ordered conservatorship due to dementia.  The statute of repose exists precisely to prevent scenarios where the evidence and memory of the transactions at issue have deteriorated due to time.

The Bankruptcy Court's decision in *In Re Castiglione* is on all fours with the present case.  There, the trustee sought to recover all property ever transferred under the claim that the transfers defrauded the Debtor's creditors.  *In re Castiglione*, 2010 WL 9474767, at *8 (Bkrtcy. E.D. Cal. 2010).  There, like here, the trustee argued that he did not obtain his status as a "hypothetical creditor" until the bankruptcy case began, and that as a result, the statute of limitations did not begin to run until the bankruptcy case was filed.  *Id*.  There, like here, the trustee argued that "§ 3439.09(c) is applicable only to actions brought under the UFTA and that it does not limit actions brought under common law fraud; [and][ that actions under common law fraud are subject to a three-year statute which begins only upon discovery by the creditor."  *Id*. at *9.  However, there, unlike here, the Bankruptcy Court *rejected* the trustee's arguments, finding:  "[i]t has been firmly established in both California state law and in the Ninth Circuit that the powers of a bankruptcy trustee in California who seeks to avoid a fraudulent transfer under either the UFTA or the common law, are limited to those transfers which occur not more than seven years

Case No. 2:22-cv-05176-DSF

1   prior to the date that the trustee is appointed." *Id.* at \*10.

2       In sum, the Trustee's cause of action is time-barred under § 3439.09(c); and
3   the Bankruptcy Court erred by holding otherwise.

4               **3.**       **The Delayed Discovery Rule Does Not Extend the Time**
5                          **Limitation on the Trustee's Claim Because GK's Knowledge**
6                          **Is Imputed to the Trustee.**

7       The Trustee's shifting theory of the applicable statute of limitations illustrates
8   the infirmity of the Trustee's position. *See Doe v. Pasadena Hospital Association,*
9   *Ltd*., 2020 WL 1244357 at \*3 (C.D .Cal. March 26, 2020.)  Regardless of which
10   statute of repose or limitation applies, the Trustee's claims are barred because GK's
11   knowledge of the 2007 transfer is imputed to the Trustee and determines the accrual
12   date for any cause of action related to the earrings.  The relevant bankruptcy statutes
13   and legislative history compel the conclusion that a bankruptcy trustee is charged
14   with GK's knowledge and bad acts.  The logic of the law is simple:  a bankruptcy
15   trustee acting under 11 U.S.C. § 541 is prohibited by law from obtaining greater
16   rights than those of the debtor whose estate the trustee represents.

17       In formulating the bankruptcy laws, Congress made clear that a trustee's
18   rights, legal or equitable, are limited to the rights of the debtor:

19           Though this paragraph [11 U.S.C. § 541(a)(1)] will
20           include choses in action and claims by the debtor against
others, it is not intended to expand the debtor's rights
against others more than they exist at the commencement
21           of the case. ***For example, if the debtor has a claim that is***
22           ***barred at the time of the commencement of the case by***
***the statute of limitations, then the trustee would not be***
23           ***able to pursue that claim, because he too would be***
***barred. He could take no greater rights than the debtor***
24           ***himself had***.

25   S.Rep. No. 989, 95th Cong., 2d Sess., 82-83 (1978), reprinted in 1978 U.S.C.C.A.N.
26   5787, 5868 (emphasis added); *see also Bank of Marin v. England*, 385 U.S. 99, 101
27   (1966) ("The trustee succeeds only to such rights as the bankrupt possessed; and the
28   trustee is subject to all claims and defenses which might have been asserted against

1  the bankrupt but for the filing of the petition."); *Stratton v. Sacks*, 99 B.R. 686, 692

2  (D. Md. 1989) ("It is well established that a trustee in bankruptcy stands in the shoes

3  of the debtor and has no greater rights than the debtor itself had. Thus, any defense,

4  legal or equitable, which might have been raised against a debtor may be raised

5  against the trustee.").

6        Under § 541, the estate over which a trustee is given control "is comprised of

7  … all legal or equitable interests of the debtor in property as of the commencement

8  of the case." 11 U.S.C. § 541(a)(1). Causes of action belonging to the debtor fall

9  within this definition. The phrase "as of the commencement of the case" places a

10  qualitative limitation to a bankruptcy trustee's rights which is no stronger than the

11  rights actually held by the debtor. *See In re GYPC, Inc.*, 634 B.R. 983, 995 (S.D.

12  Ohio 2021) ("It is black letter law that a trustee's interest in any property is limited

13  to that held by the debtor on the petition date."). As discussed above, this reflects

14  Congress's goal for a bankruptcy trustee to stand in the shoes of the debtor and

15  "take no greater rights than the debtor himself had." It follows, then, that under 11

16  U.S.C. § 541, a trustee may not overcome a defense that a bankruptcy debtor could

17  not overcome. *See In re Yellowstone Mountain Club, LLC*, 656 Fed.App'x 307, 311

18  (9th Cir. 2016) ("In general, when the *in pari delicto* doctrine is applied to a trustee

19  in bankruptcy, it is applied to counterbalance the wrongdoing of the underlying

20  debtor."); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094-1095 (2d

21  Cir. 1995) (trustee precluded from asserting professional malpractice claims because

22  of the debtor's collaboration in promoting a Ponzi scheme.); *In re Dublin Securities,*

23  *Inc.*, 133 F.3d 377, 380 (6th Cir. 1997) ("the equitable defense of *in pari delicto* can

24  properly be applied in this case to dismiss the trustee's claims"); *In re Hedged-*

25  *Investments Associates, Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996) (bankruptcy

26  trustee "may not use his status as trustee" to overcome an *in pari delicto* defense.).

27        The plain language of the Bankruptcy Code and its legislative history

28  establish a cardinal principle of bankruptcy law: that the strength of a trustee's

1    cause of action is measured by how it stood "as of commencement of the case." 11

2    U.S.C. § 541(a)(1).  Neither the Bankruptcy Court below nor the Trustee have

3    identified a statutory exception to this principle.  Therefore, GK's knowledge is

4    relevant to deciding when the statute of limitations begins to accrue. *Cf. In re Stotz*

5    *Fredenhagen Indus., Inc.*, 554 B.R. 777, 783 (Bankr. D.S.C. 2016) ("[t]herefore, the

6    relevant inquiry for determining when the statute of limitations begins to run is 'not

7    when [the trustee] learned sufficient facts but rather when the [debtors] acquired

8    sufficient knowledge to put them on notice.'").

9         The debtor in *In re Stotz* was a party to an alleged conspiracy.  In calculating

10   the statute of limitations, the Court focused on when the debtor, not the trustee,

11   acquired sufficient knowledge to put the debtor on notice:  "Because Debtor was a

12   party to the alleged conspiracy, Debtor's knowledge of the relevant facts would

13   have been obtained by way of participating in the conspiracy from day one … .

14   Therefore, there [was] no genuine dispute of material fact that Trustee's causes of

15   action are time-barred." *Id.*

16        The Court's reasoning in *In re Stotz*'s applies equally here.  Two GK partners

17   co-signed the check used to purchase the earrings.  As in *In re Stotz*, the debtor, GK,

18   was fully aware of the alleged fraudulent transfer in 2007.  Accordingly, by 2020,

19   the debtor could not have brought an action against Ms. Girardi to try to recover the

20   earrings.  Thus, the Trustee, "stepping into the shoes" of GK, has no right to pursue

21   a cause of action for the earrings.  To hold otherwise would be to elevate the

22   strength of the Trustee's cause of action for the earrings beyond what was available

23   to GK, in direct contravention of the Bankruptcy Code's statutory requirement.

24   Accordingly, regardless of which statute of limitation applies, they all fail because

25   no statute goes back 15 years to when the debtor, GK, had knowledge of the

26   transactions at issue, which is now imputed to the Trustee.

27   / / /

28   / / /

### B. THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE TRUSTEE'S TURNOVER MOTION APPLIED TO THE EARRINGS

The Turnover Motion was procedurally defective and not the appropriate avenue for the Trustee to request the turnover of the earrings for two primary reasons. First, motions for turnover under 11 U.S.C. § 542 are only proper when ownership of the property at issue is undisputed. Second, the earrings themselves, along with the client trust funds used to purchase them, are and never were property of GK's bankruptcy estate.

### 1. The Trustee's Failure to Prove that the Earrings Are Undisputed Property of the Estate Is Fatal to the Turnover Motion.

The Court erred in granting the Turnover Motion because the Trustee did not meet her burden of proving that the earrings were *undisputedly* property of the bankruptcy estate. For almost two decades, it has been black letter law in the Ninth Circuit that "turnover proceedings involve return of ***undisputed*** funds." *In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP 1994) (emphasis in original); *see In re Faasoa*, 276 B.R. 631, 646 (S.D.Cal. 2017) (turnover action was improper "since Plaintiff disputes the funds' ownership.") (citing *In re Gurga*); *In re Century City Doctors Hosp., LLC*, 466 B.R. 1, 19 (C.D.Cal. 2012) ("A turnover proceeding is 'not intended as a remedy to determine the disputed rights of parties to property; rather it is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate.'") (quotation omitted). Because the parties continue to disagree over the ownership of the earrings, the Bankruptcy Court erred in granting the Motion.

Courts in other circuits have similarly held that a § 542 turnover proceeding cannot be used when parties are in dispute over the title of the asset. *See Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R.

45, 50 n.7 (S.D.N.Y.1996) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.") (Sotomayor, J.); *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del. 2005) ("Turnover actions cannot be used to demand assets whose title is in dispute.").

In deciding *In re Century City Doctors Hosp., LLC*, 466 B.R. 1, 19 (C.D. Cal. 2012), then-Chief Judge of the Bankruptcy Court, Judge Peter Carroll, explained that courts cannot resolve ownership disputes over property through a Section 542 turnover action. Judge Carroll cited to, among other authority, the Ninth Circuit's holding in *In re Gurga* for the proposition that "[a] turnover proceeding is 'not intended as a remedy to determine the disputed rights of parties to property; rather it is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate.'" *Id.* In granting summary judgment against the bankruptcy trustee, Judge Carroll explained:

> Although [the Chapter 7 trustee] seeks "turnover" of the Transfer, he has made no allegations in the complaint or submitted any evidence in opposition to the summary judgment motion to suggest that the transferred funds are **indisputably** estate property subject to the turnover requirements under § 542. To the contrary, [the defendant] disputes that the [trustee] has any right to the refund under any theory of recovery. Accordingly, [the defendant] is entitled to summary judgment … because there simply is no legal basis for a stand-alone "turnover" claim in this case.

*Id.* (emphasis in original).

Like the chapter 7 trustee in *Century City Doctors*, the Trustee here has failed to offer any evidence to suggest that the $750,000 transfer or the earrings are "**indisputably** estate property subject to the turnover." *Id.* In addition, Ms. Girardi has challenged the Trustee's right to the earrings because she received them innocently as a gift 15 years ago from her now-estranged and then-wealthy husband. The Bankruptcy Court, also, found that there was no evidence whatsoever that Ms. Girardi had any knowledge of wrongdoing at GK related to the gift she received

1  more than 15 years ago.

2  Thus, because the Trustee did not carry her burden of proving that the

3  earrings are **indisputably** estate property, the Turnover Motion under Section 542

4  should have been denied.

5         **2.    The Trustee Bore the Burden to Prove That the Earrings**

6                 **Were Property of the Estate.**

7  To prevail on a motion for turnover, the moving party has the burden of

8  proving by a preponderance of evidence that: "1) the property is in the possession,

9  custody, or control of a noncustodial third party; 2) *the property constitutes property*

10 *of the estate*; 3) the property is of a type that the trustee could use, sell or lease

11 pursuant to section 363; and 4) the property is not of inconsequential value or

12 benefit to the estate."  *In re Zetta Jet USA, Inc.*, 624 B.R. 461, 507 (Bankr.C.D.Cal.

13 2020) (emphasis added).  Accordingly, "[t]he crucial first question raised by a

14 turnover motion is *whether the property to be turned over is property of the estate*."

15 *In re Lyle*, 324 B.R. 128, 130 (N.D.Cal. 2005) (emphasis added).  Here, the Trustee

16 did not carry her burden of proof as to this essential element.  *See In re White*, 389

17 BR 693, 699 (9th Cir. BAP 2008) ("Since the terms of § 363 … permit a trustee to

18 use, sell, or lease only 'property of the estate,' an essential element of a turnover

19 order, necessarily decided in every turnover ruling, is that the property to be turned

20 over is property of the estate.").

21 In *U.S. v. Whiting Pools, Inc.*, the Supreme Court defined the reach of Section

22 542(a) to bring into the possession of the bankruptcy estate only property in which a

23 debtor had an ownership but not a possessory interest at the start of the bankruptcy

24 proceeding:

25         In effect, § 542(a) grants to the estate a possessory interest
          in certain **property of the debtor that was not held by**
26        **the debtor at the commencement of reorganization**
          **proceedings**.

27

28 462 U.S. 198, 207 (1983) (emphasis added).  Following *Whiting Pools*, courts have

refused to turn over property that did not belong to a debtor at the start of the bankruptcy case. *See In re Roti*, 271 B.R. 281, 291 (Bankr. N.D.Ill. 2002) ("[I]f the debtor does not have the right to possess or use property at the commencement of a case, a turnover action cannot be a tool to acquire such rights."); *see also In re Mwangi*, 764 F.3d 1168, 1174 (9th Cir. 2014)("[T]he turnover provisions of 11 U.S.C. § 542 help preserve the status quo of the bankruptcy estate at the time of its formation.").

### 3.     The Earrings Were Indisputedly Not Property of the Bankruptcy Estate On the Petition Date.

Here, the earrings unquestionably did not belong to GK or the estate in December 2020 when the bankruptcy proceedings were initiated. The Trustee did not—because she could not—allege that the earrings belonged to GK at the commencement of the bankruptcy case. Thus, the Trustee failed to allege one of the required elements of a §542(a) turnover action. Instead, the Trustee alleged that earrings were fraudulently transferred to Ms. Girardi using funds from the GK Client Trust Account. *See, e.g.*, Turnover Motion (Dkt. 28) at 1 ("Girardi [stole] money from the GK Client Trust Account to buy the Diamond Earrings."); *id.* ("Girardi could not transfer legal or equitable title to the Diamond Earrings to Erika"); *id.* at 7 ("Upon discovering the fraud, the Trustee made demand upon Erika, through her counsel, to return the Diamond Earrings to the Trustee.").

Section 542, however, was and is an improper vehicle to claim an interest in or recover property that allegedly was fraudulently transferred out of the estate pre-petition. *Spradlin v. Khouri (In re Bruner)*, 561 B.R. 397, 404–05 (B.A.P. 6th Cir. 2017) (fraudulently transferred property only becomes property of the estate on avoidance of the transfer); *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005);

Moreover, "[a] Section 542 turnover action generally cannot substitute for a fraudulent-transfer action." *Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*, 879

F.3d 808, 816 (7th Cir. 2018) ("[T]he representative of a bankruptcy estate cannot use a Section 542 turnover action to regain the debtor's interest in property when he transferred it to someone else before filing bankruptcy"). In other words, because GK had no ownership interest in the earrings at the start of the bankruptcy case, "the representative of a bankruptcy estate cannot use a Section 542 turnover action to regain the debtor's interest in property when he transferred it to someone else before filing for bankruptcy." *See In re Ulz*, 388 B.R. 865, 867 (Bankr. N.D. Ill. 2008).

The Trustee's only remedy, as noted above, would have been to bring a fraudulent conveyance action under Section 548 of the Bankruptcy Code, and seek to avoid or rescind the prior transfer of funds in 2007. Alternatively, the Trustee could have tried to use her strong-arm powers under Bankruptcy Code Section 544, and brought an action for fraudulent transfer under California state law, seeking to avoid the 2007 transaction. But as noted, a cause of action under the California UFTA was and is barred by the legislative statute of repose contained in Civil Code Section 3439.09(c). Therefore, all the Trustee's potential legal remedies to void or rescind the 2007 transaction were and are, as a matter of law and public policy, time-barred. Section 542, as used by the Trustee here, does not provide an exception or short-cut to these well-established rules.

In sum, GK, and consequently the Trustee, never had any property rights in the earrings, which were not property of the GK estate on the petition date. Therefore, the Turnover Motion under 11 U.S.C. § 542 was improper, and the Bankruptcy Court erred in granting it.

### 4.    The Turnover Motion Fails Because The GK Client Trust Funds Used to Purchase the Earrings Were and Are Not Property of the Bankruptcy Estate.

The Trustee has made it clear that the turnover motion brings claims not on behalf of the bankruptcy estate, but rather, "the claim being asserted is that of the [GK Client] trust." Reply (Dkt. 48) at 7. The Trustee does not argue that the estate

1    has any property interest in the earrings themselves, but instead asserts that the

2    estate has a property interest in the GK Client Trust Account.  *See* Turnover Motion

3    (Dkt. 28) at 10 (Tom Girardi "purchase[d] Diamond Earrings with a check drawn

4    against the GK Trust Account and then gave the Diamond Earrings to Erika.").  The

5    GK Trust Account, however, is not property of the bankruptcy estate.

6        The Trustee concedes that an attorney's client trust account, such as the GK

7    Trust Account, is an express trust, which "is defined as a fiduciary relationship

8    whereby a trustee holds property for another's benefit.  (*Placerville Fruit Growers'*

9    *Assn. v. Irving,* (1955) 135 Cal.App.2d 731, 736)."  Reply (Dkt. 28) at 5.  However,

10   subsection (b)(1) of § 541 provides that property of the estate does **not** include

11   property over which a debtor exercised power "solely for the benefit of an entity

12   other than the debtor."  11 U.S.C. § 541(b)(1).  Following the statute, the Ninth

13   Circuit has long held that "[b]ankruptcy law does not view property held in trust by

14   the debtor as property of the estate available for general creditors."  *In re California*

15   *Trade Technical Schools, Inc.*, 923 F.2d 641, 645-46 (9th Cir. 1991); *see also In re*

16   *Coupon Clearing Service, Inc*., 113 F3d 1091, 1099 (9th Cir. 1997) ("Property that

17   is held in trust by a debtor for another, however, is not property of the estate.")

18   (citing *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer*

19   *Corp.)*, 13 F.3d 321, 324 (9th Cir.1994)).

20       Because Section 541(b)(1) excludes from a bankruptcy estate property held in

21   trust for another's benefit, and because an attorney exercises trustee power over a

22   client trust account for the benefit of his or her clients, an attorney trust account is,

23   as a matter of law, excluded from the bankruptcy estate.  *See United States v.*

24   *Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10 (1983) ("We do not now decide the

25   outer boundaries of the bankruptcy estate [but] note only that **Congress plainly**

26   **excluded property of others held by the debtor in trust at the time of the filing**

27   **of the petition**.")(emphasis added).

28       Other courts have similarly concluded that property held in trust by the debtor

1  is excluded from the estate.  *See, e.g.*, *Stevenson v. J.C. Bradford & Co.* (*In re*
2  *Cannon*), 277 F.3d 838, 851 (6th Cir. 2002) ("Because [the debtor] held the funds
3  deposited into his escrow accounts in express trust for his clients, we hold that these
4  monies are not part of his estate in bankruptcy."); *Bavely v. Powell*, 219 B.R. 754,
5  762 (6th Cir. BAP 1998) ("Property held by a debtor as a trustee pursuant to an
6  express trust is not property of the bankruptcy estate."); *Daly v. Kennedy*, 279 B.R.
7  455, 458 (Bankr.D.Conn. 2002) ("[F]unds held in trust by a debtor are not property
8  of his bankruptcy estate.").

9      Because the GK Client Trust Account at issue was not and cannot be property
10  of the GK estate, the Trustee cannot now use a motion for turnover under Section
11  542 to end-run the only potentially proper claims, which are fraudulent conveyance
12  claims.  And as noted, such fraudulent conveyance claims are barred by the statutes
13  of limitation and statute of repose under federal and state law.

14      **C.    CONCLUSION**

15      For the foregoing reasons, Appellant respectfully requests that the Court
16  reverse the Order of the Bankruptcy Court granting the Turnover Motion.

17

18  DATED:  September 29, 2022        GREENBERG GROSS LLP

19

20

21  By: _____
22       Evan C. Borges
23       David T. Shackelford
         Amir A. Shakoorian
24       Attorneys for Appellant Erika Girardi

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULES OF

2

## BANKRUPTCY PROCEDURE RULE 8015(A)(7)(B)

3

4         Pursuant to Federal Rules of Bankruptcy Procedure Rule 8015(a)(7)(B), I

5 certify that according to Microsoft Word the attached brief is proportionally spaced,

6 has a typeface of 14 points, and contains 9,645 words.

7

DATED:  September 29, 2022          GREENBERG GROSS LLP

8

9

10                                   By:

11                                        Evan C. Borges

12                                        David T. Shackelford

13                                        Amir A. Shakoorian

                                          Attorneys for Appellant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

### Girardi v. Miller
### Case No. 2:22-cv-05176-DSF

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 650 Town Center Drive, Suite 1700, Costa Mesa, CA 92626.

On September 29, 2022, I served true copies of the following document(s) described as **APPELLANT'S OPENING BRIEF** on the interested parties in this action as follows:

The following are those who are currently on the list to receive e-mail notices for this case.

- **Evan Christopher Borges**
  eborges@ggtriallaw.com,cwinsten@ggtriallaw.com

- **Larry Wayne Gabriel**
  lgabrielaw@outlook.com,tinadow17@gmail.com

- **David T Shackelford**
  DShackelford@GGTrialLaw.com,DVultaggio@GGTrialLaw.com

- **Amir A Shakoorian Tabrizi**
  AShakoorian@GGTrialLaw.com,DVultaggio@GGTrialLaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 29, 2022, at Costa Mesa, California.

_____
Cheryl Winsten

Case No. 2:22-cv-05176-DSF

APPELLANT'S OPENING BRIEF