# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>Girardi Keese,<br><br>　　　　　　Debtor. | CV 22-5176 DSF<br><br>20-BK-21022-BR<br>21-AP-01155-BR |
| Erika Girardi,<br><br>　　　　　　Appellant,<br><br>v.<br><br>Elissa D. Miller, Chapter 7 Trustee,<br><br>　　　　　　Appellee. | **ORDER REVERSING IN PART THE ORDER OF THE BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS; ORDER GRANTING REQUESTS FOR JUDICIAL NOTICE (Dkts. 17, 30)** |

　　This appeal arises from the Bankruptcy Court's July 11, 2022 Order granting Chapter 7 Trustee Elissa D. Miller's motion for the turnover of Appellant Erika Girardi's diamond earrings. For the reasons set forth below, the Court REVERSES in part the Bankruptcy Court's Order and REMANDS the case for further proceedings consistent with this Order.

## I. BACKGROUND

　　In December 2020, the creditors of the law firm Girardi Keese filed an involuntary Chapter 7 bankruptcy case against the law firm and an involuntary Chapter 7 bankruptcy case against Thomas (Tom) Girardi. BR 21-ap-01155, Dkt. 28 (Turnover Mot.) at 4. Upon her appointment, the Trustee began to investigate and scrutinize Girardi Keese's business records. She discovered a suspicious withdrawal from a client

trust account Girardi Keese managed in connection with the Rezulin litigation – a mass tort action on behalf of diabetes patients in which Girardi Keese was counsel for certain plaintiffs. Id. at 1. The Trustee found a check drawn on March 2, 2007 from the Girardi Keese Rezulin Trust Account (RTA) in the amount of $750,000, payable to M&M Jewelers. Id. at 5. The ledger entry for the RTA identified the $750,000 payment as "costs" and provided no further description. Id. The check was signed by both Tom Girardi and then-Girardi Keese partner James O'Callahan. Id. at 6. The Trustee also discovered a letter from Tom Girardi indicating that in 2007, he bought Appellant $750,000 earrings to replace a pair of hers that had been stolen. Id.

Upon discovering this information, the Trustee requested that Appellant turn the earrings over to the estate. Dkt. 16 (Appellee Br.) at 9. After Appellant refused, the Trustee filed a motion for turnover of the property under 11 U.S.C. § 542.[1] Id. A hearing was held before Bankruptcy Judge Barry Russell on June 28, 2022. BR 21-ap-01155, Dkt. 53 (Turnover Hr'g. Tr.). On July 11, 2022, Judge Russell granted the Trustee's motion. BR 21-ap-01155, Dkt. 58. This appeal was filed on July 26, 2022.

Appellant never sought a stay of Judge Russell's order, nor did she object to any of the orders authorizing the auction and sale of the earrings. Dkt. 29 (Appellee Suppl. Br.) at 5-6. The earrings were sold at auction on December 7, 2022. Id. at 6. The Trustee has since disbursed the fees and costs to the auctioneer. Id.

---

[1] Whether turnover motions can involve disputed property is the subject of a longstanding split of authority. The Court finds more persuasive the decisions of California bankruptcy courts that have considered the split and found that the plain language of 11 U.S.C. § 542 does not contain such a limitation. See, e.g., Process Am., Inc. v. Cynergy Holdings, LLC (In re Process Am., Inc.), 588 B.R. 82, 101 (Bankr. C.D. Cal. 2018) ("§ 542(b) makes no requirement that the debt be undisputed. . . . Cynergy's authority does not support a finding that a turnover can never involve the return of disputed funds."); In re Sonoma W. Med. Ctr., Inc., 2021 WL 4944089, at *7 (adopting the reasoning of In re Process Am., Inc.).

2

Appellant raises two issues: (1) whether the "Bankruptcy Court erred as a matter of law when it determined that the Trustee's claims . . . were not barred by the applicable statutes of limitation and statute of repose," and (2) whether the "Bankruptcy Court erred as a matter of law when it determined that the underlying property . . . was property of the bankruptcy estate" and properly subject to a turnover motion. Dkt. 11 (Appellant Br.) at 8-9.[2]

## II. LEGAL STANDARD

A bankruptcy court's conclusions of law are reviewed de novo. Factual findings are reviewed for clear error. George v. City of Morro Bay (In re George), 177 F.3d 885, 887 (9th Cir. 1999).

## III. ANALYSIS

### A.  REQUEST FOR JUDICIAL NOTICE

The Trustee requests that the Court take judicial notice of the bankruptcy docket for Case No.: 2:20-bk-21022-BR, and print outs of bankruptcy dockets for Case No.: 2:21-ap-01155-BR and Case No.: 2:22-CV-05176-DSF. Dkt. 17. The Trustee also requests that the Court take judicial notice of a motion concerning auctioneer compensation in Case No.: 2:20-bk-21022-BR. Dkt. 30.

The Trustee's unopposed requests are GRANTED.

---

[2] The Trustee filed a Counter Statement of Issues. Dkt. 6. But the Counter Statement does not assert any error by the bankruptcy court and the Trustee has not filed a cross-appeal. It is not clear to the Court that the issues are properly raised here, and the Court declines to address them except as discussed below. See Leavitt v. Alexander (In re Alexander), 472 B.R. 815, 824 (B.A.P. 9th Cir. 2012) (finding that where an appellee does "not timely file a notice of cross-appeal," a counter-statement "is not a proper substitute for one," and an appeals court lacks jurisdiction to decide the issues in the counter-statement).

## B. STANDING

The Trustee argues that Appellant lacks standing because the earrings were stolen and Appellant has no valid title to the earrings; therefore, she is merely an involuntary trustee who holds the earrings in a constructive trust and "does not have standing to object to the Trustee's Turnover Motion." Appellee Br. at 10-13. Appellant counters that she has standing as a party in interest. Dkt. 22 (Reply) at 11-12.[3]

By arguing that Appellant does not have standing because she holds the earrings in a constructive trust, the Trustee is preemptively claiming a substantive victory and then claiming that victory destroys Appellant's standing.[4]

The Court is satisfied that standing is not an issue. Appellant was the defendant below and did not initiate the suit. Standing is a doctrine that limits who can bring suit. It does not limit a party's ability to defend herself when sued. She also has standing to appeal a bankruptcy order that is adverse to her interests. Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777 (9th Cir. 1999) (holding that to have standing to appeal, "[t]he appellant must be a 'person aggrieved' by the bankruptcy court's order" and an "appellant is aggrieved if 'directly and adversely affected pecuniarily by an order of the bankruptcy court'; in other words, the order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights.")

---

[3] Appellant claims this is a new argument on appeal, but standing arguments are not waived even if the Trustee failed to raise them below. Va. House of Delegates v. Bethune-Hill, 139 S. Ct. 1945, 1951 (2019) ("As a jurisdictional requirement, standing to litigate cannot be waived or forfeited."). Further, this argument is not new, although this is the first time it has been characterized as a standing argument. See Turnover Mot. at 8-10.

[4] None of the three cases cited by the Trustee supports the idea that a defendant against whom a constructive trust is sought lacks standing to dispute the claim.

4

## C. Equitable Mootness

The Trustee maintains that because the sale went forward and Appellant failed to "file an appeal bond, or move to stay the Bankruptcy Court's order," the "authorization of the sale renders Mrs. Girardi's appeal moot." Appellee Br. at 9. Equitable mootness applies when a change in circumstances would make it "inequitable for th[e] court to consider the merits of the appeal." In re Roberts Farms, 652 F.2d 793, 798 (9th Cir. 1981). "The party moving for dismissal on mootness grounds bears a heavy burden." In re Thorpe Insulation Co., 677 F.3d 869, 880 (9th Cir. 2012) (quotation marks omitted). In the Ninth Circuit,

> [The court] look[s] first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, [the court] then will look to whether substantial consummation of the plan has occurred. Next, [the court] will look to the effect a remedy may have on third parties not before the court. Finally, [the court] will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

Id. at 881.

The first factor weighs in favor of equitable mootness. Appellant did not move for a stay, nor did she provide an adequate reason for not doing so. As noted in Rev Op Group v. ML Manager LLC (In re Mortgs. Ltd.), Ninth Circuit precedent is inconsistent in its decisions about whether failing at the first step automatically renders the appeal equitably moot. 771 F.3d 1211, 1215 (9th Cir. 2014) ("When an appellant fails to seek a stay without giving adequate cause, we have held that we dismiss the appeal as equitably moot. . . . We have not consistently followed this helpful and clear rule, though, and have held in at least two cases that, in the instances there described, an appeal is

5

not equitably moot despite the failure to seek a stay.") (citing cases). However, given "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), the Court finds more persuasive the cases that evaluate the remaining factors even where no stay was sought.

The second factor, whether substantial consummation of the plan has taken place, weighs against equitable mootness. Substantial consummation is defined by the Bankruptcy Code as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). Courts find substantial consummation has occurred where the debtor makes plans pursuant to a confirmed plan. Antiquities of Nevada v. Bala Cynwyd Corp. (In re Antiquities of Nevada), 173 B.R. 926, 930 (9th Cir. B.A.P. 1994) ("Since Antiquities has assumed management and control of the property administered under the confirmed plan, and commenced distribution of payments on both short and long term debt on the effective date, we hold that the plan has been 'substantially consummated.'"). The Trustee has not presented any argument that there is a confirmed plan or that distributions have commenced under a plan.

The third and fourth factors, effect on innocent parties and ability to fashion relief, do not weigh in favor of equitable mootness. Here a remedy would entail the Trustee turning over the proceeds of the sale, which would have no impact on an innocent party. The only potential innocent party the Trustee points to is the purchaser of the earrings. The Trustee is concerned that the buyer would be negatively impacted

6

by an unwinding of the sale. See, e.g., Dkt. 33 at 7 (Suppl. Br. Reply). This concern is misplaced. The sale would not be undone. The actual sale of the earrings is statutorily moot under 11 U.S.C. § 363(b). In re Elieff, No. 21-56177, 2022 WL 14476315, at *1 (9th Cir. Oct. 25, 2022) (unpublished) (finding that while the court could not determine if a claim was equitably moot, the appeal was "statutorily moot by operation of 11 U.S.C. § 363(m), which provides that reversal or modification of a sale order on appeal does not affect the validity of a sale to a good-faith buyer unless the sale was stayed pending appeal."). Any relief would be fashioned from the proceeds of the sale. Here the "proceeds net of the cost of the sale and the buyer's premium, are being held by the Trustee." Suppl. Br. Reply at 1.

The Trustee has not met the heavy burden to show that these factors weigh in favor of finding equitable mootness. The appeal is not equitably moot.

### D. Statute of Limitations and Statute of Repose

Appellant asserts that the Trustee's claim is barred by the applicable statute of limitations and statute of repose contained in California's Uniform Fraudulent Transfer Act (UFTA), as codified in Cal. Civ. Code § 3439.09(c). Appellant Br. at 11. The Court finds that the turnover motion is not barred by either.

#### 1. The Underlying Action

Appellant argues that California courts look to the gravamen of the action to determine what limitations period should apply. Appellant Br. at 14 (citing FDIC v. McSweeney, 976 F.2d 532, 534 (9th Cir. 1992)). She then posits that the gravamen of the turnover motion is a fraudulent transfer claim. Consequently, it is subject to California's seven-year statute of repose for fraudulent transfer claims.[5] Appellant Br. at 14-16; see also Cal. Civ. Code § 3439.09(c).

---

[5] Appellant's arguments also do not account for the fraudulent transfer statute of limitations provisions contained in the Bankruptcy Code that pre-empt California's statute of repose. Rund v. Bank of Am. Corp. (In re EPD

The Court is not persuaded that the turnover claim should be recast as a fraudulent transfer claim. The Trustee asserts the turnover claim pursuant to 11 U.S.C. § 542. That section of the Bankruptcy Code allows a bankruptcy trustee to recover "all legal or equitable interests of the debtor in property as of the commencement of the case" held by third parties. 11 U.S.C. §§ 541-42. The Trustee did not request the return of the property under 11 U.S.C. § 548, the section of the Bankruptcy Code that invalidates fraudulent transfers. The situation here is not akin to a fraudulent transfer. Fraudulent transfer claims address strawman transactions that are done "with intent to 'hinder, delay, or defraud' creditors." Diamond v. Hogan Lovells US LLP, 883 F.3d 1140, 1147 (9th Cir. 2018) (quoting § 548(a)(1)). The Trustee makes no argument that the transfer here was done to avoid creditors. The Trustee argues that the earrings are estate property and that good title never passed to Appellant. The Court is not persuaded that it should treat the claim as a fraudulent transfer claim brought under 11 U.S.C. § 548 and import the California fraudulent transfer statute of repose.

### 2. No Statute of Limitations Applies

For 11 U.S.C. § 542 turnover claims, the Bankruptcy Code imposes no statute of limitations. 5 Collier on Bankruptcy ¶ 542.01 (16th ed. 2023) ("Section 542 does not impose a statute of limitations on turnover claims."); Burtch v. Ganz (In re Mushroom Transp. Co.), 382 F.3d 325, 337 (3d Cir. 2004) ("The Bankruptcy Code does not impose a statute of limitations on turnover claims arising under [§ 542]."). Rather, because "turnover claims are equitable in nature, . . . they are subject to laches." Id.; see also Russell v. Todd, 309 U.S. 280, 287 (1940) ("From the beginning, equity, in the absence of any statute of limitations made

---

Inv. Co., LLC), 523 B.R. 680, 682 (9th Cir. B.A.P. 2015) (finding that § 546(a) preempts a state-law statute of repose such as Cal. Civ. Code § 3439.09(c)"). These limitations periods contained in the Bankruptcy Code are subject to equitable tolling. Ernst & Young v. Matsumoto (In re United Ins. Mgmt.), 14 F.3d 1380, 1385 (9th Cir. 1994) (citing Bailey v. Glover, 88 U.S. 342, 349-350 (1875)).

applicable to equity suits, has provided its own rule of limitations through the doctrine of laches.").

The doctrine of laches does not bar the relief sought here. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (simplified). The party asserting laches bears the burden to "show that it suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit." Id. Unlike statutes of limitations, laches is not about "a mere matter of time; but [is] principally a question of the inequity of permitting the claim to be enforced." Galliher v. Cadwell, 145 U.S. 368, 373 (1892). Appellant has made no claim that she has been prejudiced because of the delay. Further, the Trustee did not discover that the earrings had been purchased with money from a Girardi Keese client trust account until July 2021. Turnover Mot. at 14. The Trustee commenced proceedings against Appellant in July 2021 and sought the turnover of the earrings in January 2022. Id.; see also BR 21-ap-01155, Dkt. 1. There is no inequity in permitting the claim.

### 3. Imputation of Girardi Keese's Knowledge

Appellant maintains that regardless of what time constraint applies, the time to file the lawsuit has passed. Under 11 U.S.C. § 541, a trustee inherits the interests of a debtor, thus Appellant argues "GK's knowledge of the 2007 transfer is imputed to the Trustee and determines the accrual date for any cause of action related to the earrings." Appellant Br. at 22.

It is true that the rights of a trustee are generally limited to the rights of the debtor. Thus, the trustee "can only assert those causes of action possessed by the debtor" and is "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." Official Comm. of Unsecured Creditors ex rel. Estate of Lemington Home for the Aged v. Baldwin (In re Lemington Home for the Aged), 659 F.3d 282, 292 (3d Cir. 2011).

However, any knowledge Girardi Keese may have had of the 2007 misuse of funds does not bar the current claim. Appellant does not show that she was prejudiced by any delay in bringing the claim. Further, a claim for a turnover of estate property does not exist until bankruptcy is filed. 11 U.S.C. § 541(a) ("commencement of a case under section 301, 302, or 303 of this title creates an estate"); 11 U.S.C. § 542(a) ("an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property").

It would be odd to say that the Trustee is barred from bringing the action because Girardi Keese should have brought the action in 2007, or shortly thereafter. The cause of action was not available until the bankruptcy case was filed in December 2020. Even at law, statutes of limitations do not prevent a recovery where a misuse of funds went undiscovered for so long because it was perpetuated by principals, directors, or officers capable of hiding the wrongdoing. Smith v. Superior Ct., 217 Cal. App. 3d 950, 954 (1990) ("statute of limitation tolls when a claim arises from a director's or employee's defalcation and the wrongdoers' control makes discovery impossible."); In re Yellowstone Mountain Club, LLC, 656 Fed. App'x 307, 310 (9th Cir. 2016) (stating that even if the limitations period had passed for a trustee's claims for breach of fiduciary duty, the statute of limitations would have been tolled because the breach was not discovered until later and an officer's knowledge of self-dealing could not be attributed to debtor; furthermore "the doctrine of adverse domination, or a similar doctrine, would toll the statute of limitations in these circumstances."). Applying a similar line of reasoning here, Tom Girardi capably hid this misuse of funds for well over a decade. That will not bar the suit now that the wrongdoing has been discovered. Given these considerations, the Court finds that the turnover claim is not barred by the doctrine of laches.

Appellant also argues that Girardi Keese would not have been able to bring this suit because of the doctrine of *in pari delicto* and therefore,

the Trustee should be barred as well. Appellant Br. at 22-24. The Court disagrees. The doctrine of *in pari delicto* provides that "when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them." Goldman v. Dardashti (In re Tootian), 634 B.R. 361, 373 (Bankr. C.D. Cal. 2021). "[T]he application of *in pari delicto* to bankruptcy trustees has not conclusively been decided in the Ninth Circuit [but] [a]ll Circuits to have considered the issue have determined that the defense of *in pari delicto* may be asserted against a bankruptcy trustee where the underlying state law recognizes the doctrine." Id. at 374 (collecting cases). California law recognizes *in pari delicto*; it is codified in Civil Code § 3517, which states that "[n]o one can take advantage of his own wrong." California courts applying *in pari delicto* examine: (1) whether the misconduct at issue can be "imputed to the corporate" debtor; (2) whether the debtor's "misconduct can be imputed to the bankruptcy trustee"; and (3) "whether the misconduct is sufficiently related to the causes of action asserted" by the trustee in the bankruptcy. Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP, 133 Cal. App. 4th 658, 679 (2005) (citations omitted). None of the cases cited by Appellant apply the doctrine for this purpose.[6]

Appellant fails to show that the misconduct at issue can be imputed to Girardi Keese such that the action should be barred.

### E. Estate Property and Turnover Motion

The Trustee has not met her burden to show that the earrings were estate property. As relevant here, to support a cause of action for turnover, a trustee has the burden of proof, by a preponderance of the evidence, to establish that the property is in the possession of a

---

[6] Appellant addresses *in pari delicto* under her section on statutes of limitations. Appellant Br. at 22-24. It seems as if she is trying to use *in pari delicto* as a bar to equitable tolling and to show that her defenses related to time should succeed. Not a single case cited by Appellant applies *in pari delicto* to achieve that result.

noncustodial third party and the property constitutes property of the estate.  In re Jacobson, 676 F.3d 1193, 1200-01 (9th Cir. 2012). "Federal law determines what property is included in the estate, while state law controls whether the debtor has a legal or equitable interest in the property at the time the bankruptcy case is filed."  In re Edwards, No. 12-2276 JM (KSC), 2013 WL 4499121, at *1 (S.D. Cal. Aug. 19, 2013), citing In re Westfall, 599 F.3d 498, 502 (3d Cir. 2010).

The Trustee has failed to meet her burden to show that the earrings are estate property.  The $750,000 used to purchase the earrings came from the RTA.  Reply at 20; Turnover Mot. at 6, 8.  This was an express trust account that Girardi Keese managed for its Rezulin clients.  Id. Money that Girardi Keese held in trust for the Rezulin clients was not estate property.  Begier v. I.R.S., 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").

The Trustee's only basis for her argument that the earrings are estate property is a claim that the trust funds are presumptively estate property because Girardi Keese commingled the money in the RTA. Appellee Br. at 21-23.  It is true that commingled funds in a bank account controlled by the debtor are presumptively estate property. See Danning v. Bozek (In re Bullion Reserve of North America), 836 F.2d 1214, 1217 (9th Cir. 1988) ("the money [the debtor] used to purchase bullion came from commingled bank accounts under [the debtor]'s control. Because this money could have been used to pay other creditors, it presumptively constitutes property of the debtor's estate"). And the party seeking to exclude those funds from the estate bears the burden to show that the commingled funds are not estate property.  Id. at 1217-18 (finding a creditor bore the burden to trace commingled funds from a trust and show they were not property of the debtor) (citations omitted); see also Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.), 104 F.3d 293, 294 (9th Cir. 1997) ("Under the strict tracing standard applicable to bankruptcy cases involving commingled funds, the [creditor] bears the burden of tracing the alleged trust property . . . . If the appellant fails to trace the funds, the court must

presume that the funds constitute an interest of the debtor in property").

However, merely stating that the funds have been "commingled" does not make it so. The Trustee must show, by a preponderance of evidence, that the funds were commingled such that they are presumptively estate property. In California, client trust accounts are to be "established and maintained consistent with the attorney's or law firm's duties of professional responsibility." Cal. Bus. & Prof. Code § 6212. The California Rules of Professional Conduct mandate that:

> Funds belonging to the lawyer or the law firm shall not be deposited or otherwise commingled with funds held in a trust account except:
>
> (1) funds reasonably sufficient to pay bank charges; and
>
> (2) funds belonging in part to a client or other person and in part presently or potentially to the lawyer or the law firm, in which case the portion belonging to the lawyer or law firm must be withdrawn at the earliest reasonable time after the lawyer or law firm's interest in that portion becomes fixed.

Rules of Prof. Conduct 1.15 (Cal. 2023). This rule has been interpreted to mean that a lawyer commingles funds with a client's funds where "a client's money is intermingled with that of the attorney and its separate identity lost." Matter of Bleecker, 1 Cal. State Bar Ct. Rptr. 113, 123 (Rev. Dept. 1990) (quotation marks omitted). Alternatively, the funds are commingled where the attorney fails to withdraw the attorney's fixed fees and costs at the earliest reasonable time. Matter of Heiner, 1 Cal. State Bar Ct. Rptr. 301, 312 (Rev. Dept. 1990) (rule violation supported by the fact that attorney did not withdraw his fees at "the earliest reasonable time after his interest in it became fixed."). The Trustee has done no legwork here to show the funds were commingled. At most, the Trustee merely posits that the "funds are commingled." Appellee Br. at 22. There are no facts in the record that indicate when Girardi Keese's costs and fees became fixed, or whether they were withdrawn at that time. The Trustee has made no persuasive showing that the separate identity of the money was

13

completely lost. Because the Trustee has failed to show that the funds were commingled, she has not met her burden to show that the earrings were estate property.

\* \* \*

The Bankruptcy Court's Order is REVERSED in part and the matter is REMANDED for further proceedings in accordance with this Order.

IT IS SO ORDERED.

Date: May 1, 2023

Dale S. Fischer
United States District Judge